FILED
United States Court of Appeals
Tenth Circuit

March 5, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

STACY JO KNAPP, a/k/a Stacy Jo Rafay,
a/k/a Stacey Jo Knapp,

      Defendant - Appellant.

No. 18-8031

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:17-CR-00207-SWS-1)**
_____

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public
Defender, with him on the briefs), Denver, Colorado, for Appellant.

Nicole M. Romine, Assistant United States Attorney (Mark A. Klaassen, United States
Attorney, with her on the brief), Cheyenne, Wyoming, for Appellee.
_____

Before **HOLMES**, **McKAY**, and **KELLY**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant-Appellant Stacy Knapp entered a conditional plea of guilty to being a

felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) & 924(a)(2), and she was

sentenced to 36 months' imprisonment and three years' supervised release.  The

conditional plea allowed her to appeal the district court's denial of her motion to suppress, and in the event it is successful, to withdraw her guilty plea. Fed. R. Crim. P. 11(a)(2). Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

## Background

The parties do not dispute the material facts found by the district court. Ms. Knapp called the police to report a theft at a grocery store in Gillette, Wyoming. 3 R. 18–19. Officers responded to the call, apprehended the theft suspect, and took a statement from Ms. Knapp in the grocery store. Id. at 19. During their investigation officers gave police dispatch Ms. Knapp's name. Id. Dispatchers discovered that Ms. Knapp had an outstanding warrant for her arrest and informed Officer Zachary Parker. Id. at 19–20. By then Ms. Knapp had already left the grocery store, so Officer Parker went to the grocery store parking lot to find Ms. Knapp. Id. at 20.

Officer Parker found Ms. Knapp in the driver's seat of a parked pickup truck outside the store. Id. He instructed her that she could not leave because he had to arrest her. Id. at 21. Ms. Knapp exited the truck and followed Officer Parker back into the grocery store. Id. Ms. Knapp voluntarily retrieved her purse from the seat of the truck when she followed Officer Parker back to the grocery store. Id. at 21–22. Because the officers were still concluding their theft investigation, Officer Parker asked Ms. Knapp to sit on a chair outside a bank office located within the store. Id. at 23.

Once Ms. Knapp sat down, Officer Parker moved her purse, which was closed by a zipper, a few chairs away from her. Id. at 24. Ms. Knapp then asked her friend who

2

was also present to take her purse, so she would not have to take it to jail.  Id. at 25.  This raised the officers' suspicions.  Id. at 70–71.  When her friend — who was originally willing to take her purse — declined, after being warned by Officer Jacob Foutch that taking it could be illegal, she tried to have her boyfriend take it or leave it in the truck she had been driving.  Id. at 25–26, 41, 67–68.  However, Officer Parker refused to let her leave her purse in the truck.  Id. at 26, 70–71.  Officer Parker then asked for her consent to search the purse but she refused.  Id. at 41–42.  The officers then placed Ms. Knapp in handcuffs behind her back, and Officer Foutch led her outside while Officer Parker carried the purse.  Id. at 42–43; 1 Supp. R., Ex. C (Subpoena 17-06882 File 4, Body Cam Video of Officer Jake Foutch), at 29:30–30:00.

The officers and Ms. Knapp walked to Officer Parker's patrol vehicle, and Ms. Knapp stood in front of the hood facing Officer Foutch.  3 R. 43.  Officer Parker placed the purse on the hood of his patrol car.  Id. at 28.  At that time, Ms. Knapp stood near the bumper of the patrol car, the purse was on the hood near the windshield (about three to four feet from Ms. Knapp), and Ms. Knapp stood handcuffed facing away from the car and toward Officer Foutch.  Id. at 28, 43, 56–57.  Ms. Knapp's friend was on the opposite side of the patrol vehicle.  Id. at 28.  Next, after Officer Foutch threatened that she would be guilty of a felony for bringing drugs to a detention center, Ms. Knapp told him she was carrying a pistol in her purse.  1 R. 50, 55.  At that point the officers searched the purse and found her pistol.  When they searched the purse, three officers were present.  See 3 R. 29.

Ms. Knapp was charged with one count of unlawfully possessing a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). 1 R. 10. She moved to suppress the firearm on Fourth Amendment grounds, arguing that the search was unreasonable and that her statement acknowledging the presence of the firearm was inadmissible derivative evidence. Id. at 12–17. The government argued that the search was proper under the search incident to arrest and inevitable discovery exceptions. Id. at 18–24; 3 R. 87–89. Without reaching the inevitable discovery issue, the district court concluded that the search incident to arrest exception applied and consequently denied the motion to suppress. 1 R. 163.

The district court, noting that the case presented a "difficult choice," 3 R. 107, held that the search satisfied both the spatial and temporal proximity requirements essential for a search incident to arrest. 1 R. 160, 162. The district court reasoned that Ms. Knapp's purse was approximately three feet away from her when it was searched, and thus she could have gained access. Id. at 160. It reasoned that any delay between the arrest and the search (some 12 to 13 minutes) was necessitated by the officers conducting a theft investigation and allowing Ms. Knapp to make arrangements for her truck; there were no other intervening events separating the arrest from the search. Id. at 162.

On appeal, Ms. Knapp argues that (1) the search of her purse was not truly incident to her arrest given intervening events, and (2) the search incident to arrest exception does not apply because (a) the police chose to put Ms. Knapp in proximity with her purse, and (b) Ms. Knapp could not have accessed the purse's contents at the time of the search. The government responds that given a lawful arrest, Ms. Knapp's first

4

argument is in essence an attack on the district court's contrary factual finding. The government further responds that law enforcement did not artificially create the circumstances justifying a search of the purse incident to arrest, and law enforcement properly searched the purse incident to an arrest because the purse was on her person at the time of the arrest.[1]

**Discussion**

This court reviews de novo whether a search or seizure was reasonable under the Fourth Amendment. United States v. Sanders, 796 F.3d 1241, 1243–44 (10th Cir. 2015). It reviews the district court's factual findings for clear error, and when reviewing the denial of a motion to suppress, it views the evidence in the light most favorable to the government. United States v. Serrato, 742 F.3d 461, 470 (10th Cir. 2014).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In general, warrantless searches are per se unreasonable. Katz v. United States, 389 U.S. 347, 357 (1967). The warrantless search rule, however, is subject to several exceptions. One exception allows arresting officers to "search the person of the accused when legally arrested." Weeks v. United States, 232 U.S. 383, 392 (1914).

---

[1] Although the government briefed the inevitable discovery issue, see Aplee. Br. at 22–24, it has since conceded that this issue is not ripe for consideration on appeal because it involves disputed factual questions that must be resolved by the district court in the first instance. Oral Arg. at 25:15–50. We accordingly do not consider this issue on appeal, although we note that this argument may be raised again on remand.

Case law has developed to allow not only the search of the arrestee's person, but also the area within the arrestee's "immediate control." Chimel v. California, 395 U.S. 752, 763 (1969). This authority is justified by the need to disarm the suspect and preserve evidence. United States v. Robinson, 414 U.S. 218, 234 (1973).

Whether a search is "of the person" or of the area within the arrestee's "immediate control" — that is, "the area from within which he might gain possession of a weapon or destructible evidence" — is a critical distinction.[2] Chimel, 395 U.S. at 763. In United States v. Robinson, the Court held that a search of an arrestee's person incident to arrest need not be justified on a case-by-case basis. Robinson, 414 U.S. at 235. Although the Court did not address whether areas within the arrestee's immediate control are also categorically subject to warrantless searches incident to arrest, it noted that searches of the arrestee's person and searches of the area within the arrestee's immediate control are "two distinct propositions" that "have been treated quite differently." Id. at 224. The Court later reinforced this distinction, albeit in dicta, by noting that arrests create a reduced expectation of privacy in an arrestee's person, but not in possessions within her immediate control. United States v. Chadwick, 433 U.S. 1, 16 n.10 (1977), abrogated on other grounds by California v. Acevedo, 500 U.S. 565 (1991); see also United States v. Riley, — U.S. —, 134 S. Ct. 2473, 2483 (2014) (justifying the rule in Robinson by balancing the arrestee's expectation of privacy in her person with the need to prevent

---

[2] Other circuits have aptly referred to this area of immediate control as the arrestee's "grab area." See, e.g., United States v. Gandia, 424 F.3d 255, 261 (2d Cir. 2005); United States v. Ortiz, 146 F.3d 25, 28 (1st Cir. 1998); United States v. Hudson, 100 F.3d 1409, 1420 (9th Cir. 1996).

6

harm to the officers and destruction of evidence).  It thus stands to reason that searches of areas within an arrestee's immediate control must be justified on a case-by-case basis by the need to disarm or to preserve evidence.  See United States v. Morgan, 636 F.2d 1561, 1578 n.2, 1579 (10th Cir. 1991) (Seymour, J., dissenting); cf. United States v. Pacheco, 884 F.3d 1031, 1043 n.9 (10th Cir. 2018) (noting that Robinson authorizes only a "limited search of items found during [a] pat-down" incident to a lawful arrest).

Because the validity of Ms. Knapp's arrest is not at issue, this appeal turns on (1) whether the search of her purse was one of her person for the purposes of Robinson, and (2) if the search was not of her person, whether the search was nevertheless justified because it was within "the area from within which [she] might [have] gain[ed] possession of a weapon or destructible evidence."  Chimel, 395 U.S. at 763.

## A.     The Search of Ms. Knapp's Purse Was Not One "Of Her Person"

Ms. Knapp presents two arguments why the search of her purse was not one "of her person" at the time of her arrest.  See Aplt. Br. at 11–18.  First, she argues that the government is wrong on the facts because she was not carrying her purse when she was told she was under arrest; rather, it was sitting somewhere within the truck, and she had to "collect" it from the truck to bring it into the store.  Aplt. Reply Br. at 11.  The district court did not make a specific factual finding comparing the exact time of the arrest with when Ms. Knapp grabbed her purse.  It simply noted, "[Ms. Knapp] brought her purse with her into the grocery store."  1 R. 155.

Even if Ms. Knapp was carrying her purse at the time of her arrest, she argues that the arresting officers' search was not one "of her person."  Aplt. Reply Br. at 12–18.

Whether the search of a purse (or similar item) carried by an arrestee but not within her clothing is one "of the person" is a question of first impression in this circuit. Indeed, the Supreme Court has not clearly demarcated where the person ends and the "grab area" begins. However, we must resolve the question now before us, and we hold that the better view is that a carried purse does <u>not</u> qualify as "of the person." We reach this conclusion for several reasons.

First, the animating reasons supporting arresting officers' "unqualified authority" to search an arrestee's person are less salient in the context of visible, handheld containers such as purses. <u>Robinson</u>, 414 U.S. at 225. <u>Robinson</u> was based in part on the notion that a lawful arrest empowers an officer to disarm, and if "he ma[y] disarm, he may search, lest a weapon be concealed." <u>Id.</u> at 232 (quoting <u>People v. Chiagles</u>, 142 N.E. 583, 584 (1923) (Cardozo, J.)). Although Justice Marshall disagreed in his dissent in <u>Robinson</u> with the Court's grant of unqualified authority to search an arrestee's person, he acknowledged that more thorough searches of arrestees may be necessitated by the risk that an arrestee in "prolonged proximity" to officers could harm them with a concealed weapon. <u>Robinson</u>, 414 U.S. at 253–54 (Marshall, J., dissenting). Because of an arrestee's ability to always access weapons concealed in her clothing or pockets, an officer must necessarily search those areas because it would be impractical (not to mention demeaning) to separate the arrestee from her clothing.[3] <u>See</u> <u>United States v.</u>

---

[3] It is for this reason that we decline to follow those courts construing the arrestee's "person" to include any containers in the arrestee's "actual" or "physical" possession at the time of arrest. <u>See, e.g.</u>, <u>People v. Cregan</u>, 10 N.E.3d 1196, 1207 (Ill. 2014) (a

Edwards, 415 U.S. 800, 803 (1974) (holding that a delay in searching an arrestee's clothing for evidence at the stationhouse was reasonable because officers could not have deprived him of his clothing until substitute clothing was available). In addition, the holding in Robinson relied on an arrestee's diminished privacy interest in her person by way of her arrest such that a pat-down and inspection of containers found within her clothing "constitute[] only minor additional intrusions." Riley, 134 S. Ct. at 2484. Containers held in an arrestee's hand and not concealed on her body or within her clothing do not implicate such concerns to the same degree.

Second, given that handheld containers such as purses are easily dispossessed, classifying such containers as potentially part of an arrestee's person would necessitate unworkable determinations about what the arrestee was holding at the exact time of her arrest. Although under Robinson the bounds of an arrestee's person are determined "[w]hen an arrest is made," Robinson, 414 U.S. at 226 (quoting Chimel, 395 U.S. at 762–63)), searches of an arrestee's person should not depend on an exact time of arrest. Such a rule would be unworkable in cases like this; it would require arresting officers to determine or remember exactly when a person obtained or shed the object at issue and compare that to the exact moment when the officer placed her under arrest. And, because an arrestee can dispossess a handheld container simply by releasing it from her hand, more confusion than clarity would result from such a requirement. The Fourth

---

wheeled bag was on an arrestee's person because he was gripping its handle at the time of arrest); State v. Byrd, 310 P.3d 793, 794, 798 (Wash. 2013) (a search of a purse on an arrestee's lap constituted a search of her person).

9

Amendment is meant to guide law enforcement conduct and thus needs to be readily determinable by officers in the field. See Davis v. United States, 564 U.S. 229, 233 (2011). A rule requiring precise timing would frustrate that goal.

Third, a holding to the contrary would erode the distinction between the arrestee's person and the area within her immediate control. The government urges the definition of an arrestee's person includes a "container that has a close association with the person," Aplee. Br. at 17, a definition likely originating from the Court's description of the Robinson exception applying to "personal property . . . immediately associated with the person of the arrestee." Riley, 134 S. Ct. at 2484 (emphasis added) (quoting Chadwick, 433 U.S. at 15). To the extent the government suggests a construction that includes more than the arrestee's immediate person, worn clothing, or containers concealed within her clothing, we decline to adopt it. Certainly, officers would have clear guidance from a rule allowing them to search any container that an arrestee was or may have been touching around the time of arrest. But such a rule risks expanding Robinson's limited exception to grant unqualified authority to search an arrestee's grab area. The better formulation, we believe, would be to limit Robinson to searches of an arrestee's clothing, including containers concealed under or within her clothing. Accordingly, visible containers in an arrestee's hand such as Ms. Knapp's purse are best considered to be within the area of an arrestee's immediate control — thus governed by Chimel — the search of which must be justified in each case. Accord United States v. Monclavo-Cruz, 662 F.2d 1285, 1287–88 (9th Cir. 1981); State v. Carrawell, 481 S.W.3d 833, 840–41 (Mo. 2016) (en banc).

10

We also decline to construe the phrase "immediately associated with the person" as calling for an examination of the container's function vis-à-vis the arrestee. Reading Chimel, Robinson, and their progeny together, searches incident to arrest are governed by a container's location relative to the arrestee and the degree to which it can be accessed by or separated from the arrestee, rather than the manner in which it is typically used. Compare Edwards, 415 U.S. at 804–805 (the impracticality and indignity of removing an arrestee's clothing to preserve evidence supports characterizing worn clothing as "of the person" under Robinson), with New York v. Belton, 453 U.S. 454, 460 n.4 (1981) (providing as examples of containers possibly within an arrestee's reach luggage, boxes, bags, and even clothing). The comparison of purses to items of similar use, such as wallets, is therefore misleading.[4] See Aplee. Br. at 14 (citing United States v. Van Dam, 37 F. App'x 461, 463–64 (10th Cir. 2011)). Because Ms. Knapp's purse, which was not concealed under or within her clothing, was easily capable of separation from her person, we hold that the arresting officers had no authority to search its contents pursuant to Robinson.

---

[4] Although the Court in Riley held that cellular phones "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse," and it noted that lower courts have approved searches of purses incident to arrest, it did not endorse the searches of purses under Robinson, nor did it equate a purse to a wallet. Riley, 134 S. Ct. at 2488–89. Instead, the comparison supported its narrower holding that cellular phones must be exempt from Robinson searches because of the sheer quantity of personal information they contain. Id.

**B.** **The Search of Ms. Knapp's Purse Was Not Justified Under the Circumstances**

We next turn to whether the search of Ms. Knapp's purse was nevertheless justified by either the need to preserve evidence or the need to disarm Ms. Knapp. This question depends on whether the purse was within the area the arresting officers could "reasonably have believed . . . [the arrestee] could have accessed . . . <u>at the time of the search</u>." <u>Arizona v. Gant</u>, 556 U.S. 332, 344 (2009) (emphasis added).

At the outset, we note that although <u>Gant</u> specifically addressed the search of an automobile, its principles apply more broadly. The Court held such searches are justified either by the "twin rationales of <u>Chimel</u>" or by an arresting officer's reasonable belief that the vehicle contains evidence of the crime precipitating the arrest. 556 U.S. at 342–43 (quoting <u>Thornton v. United States</u>, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring in part)). As the Third Circuit observed, <u>Gant</u> meant to keep searches incident to arrest tethered to the <u>Chimel</u> justifications, and <u>Chimel</u> did not involve a vehicle search. <u>United States v. Shakir</u>, 616 F.3d 315, 318 (3d Cir. 2010) (involving a gym bag); <u>see also</u> <u>United States v. Cook</u>, 808 F.3d 1195, 1199–1200 (9th Cir. 2015) (applying <u>Gant</u> to the search of a backpack). The Court also held that the second justification — the need to search a vehicle for evidence — but not the first, is "unique to the vehicle context." <u>Id.</u> at 343. We therefore join the Third Circuit in interpreting <u>Gant</u> as focusing attention on the arrestee's ability to access weapons or destroy evidence at the time of the search, rather than the time of the arrest, regardless of whether the search involved a vehicle. <u>Id.</u>

Applying Gant and Chimel, it was unreasonable to believe Ms. Knapp could have gained possession of a weapon or destructible evidence within her purse at the time of the search.[5] We look to the following factors to determine whether an area searched is within an arrestee's grab area under Chimel: (1) whether the arrestee is handcuffed; (2) the relative number of arrestees and officers present; (3) the relative positions of the arrestees, officers, and the place to be searched; and (4) the ease or difficulty with which the arrestee could gain access to the searched area. United States v. Parra, 2 F.3d 1058, 1066 (10th Cir. 1993). Certainly, officers' "exclusive control" of an arrestee's article is not dispositive of the permissibility of the search. See Belton, 453 U.S. at 461 n.5. However, the degree to which arresting officers have separated an article from an arrestee at the time of the search is an important consideration. See Gant, 556 U.S. at 343 (searches of an arrestee's vehicle are permissible "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"). Here, not only were Ms. Knapp's hands cuffed behind her back, Officer Foutch was next to her, and two other officers were nearby. Moreover, the purse was closed and three to four feet behind her, and officers had maintained exclusive possession of it since placing her in handcuffs. We have similarly rejected a search where the defendant was handcuffed behind his back and could therefore not reach the inside of his bureau

---

[5] Because we hold that it was unreasonable to believe Ms. Knapp could have accessed her purse and used the firearm contained within at the time of the search, we need not reach Ms. Knapp's other arguments that the search was separated from the arrest by intervening events, and that the officers chose to place the purse within reaching distance.

drawers, night stand, or under his bed. See United States v. Baca, 417 F.2d 103, 105 (10th Cir. 1969); see also United States v. Leo, 792 F.3d 742, 750 (7th Cir. 2015) (holding that a backpack was not in the defendant's immediate control after an investigatory stop where his "hands were cuffed behind his back," and the backpack was "no longer in [the defendant's] possession," reasoning that it was "inconceivable that" the defendant "would have been able to lunge for the bag, unzip it, and grab the gun inside"). Accordingly, although the district court noted that the purse was approximately three feet away from her at the time of the search, and that she was not otherwise restrained by the police officers, 1 R. 160, its finding that she could nevertheless have opened the purse and retrieved the firearm from within was in error.

The government relies on two Tenth Circuit cases from before Gant to support its position. See Aplee. Br. at 21. The first, United States v. Parra, involved arresting officers' search under two pillows. At the time officers searched under the first pillow the two arrestees were being handcuffed, but when police searched under the second, the arrestees were handcuffed behind their backs and seated. 2 F.3d at 1066. The search under the first pillow — before the arrestees were handcuffed — was permissible because "there remained a strong possibility that [one of the arrestees] could break free and retrieve whatever was hidden under the pillow." Id. Even though both arrestees were handcuffed, the search of the second pillow was reasonable because the arrestees could have lunged for a weapon and easily brushed aside the pillow when no officers stood between them and the pillow. Id. And, most importantly, police had found a handgun under the first pillow. Id. Aside from the fact that the arrestees were handcuffed behind

14

their backs in Parra, it is readily distinguishable from this case because the factors Parra listed apply differently here. First, there was only one arrestee here and three police officers, whereas Parra involved two arrestees. Second, Ms. Knapp's purse was closed, whereas the pillow in Parra could easily have been brushed aside. Finally, Ms. Knapp tried repeatedly to leave her purse behind for the whole encounter (suggesting she was not trying to effect an escape using a weapon held within it), while a defendant in Parra glanced at the pillow when asked to raise his hands. Id.

The second case, United States v. Dennison, 410 F.3d 1203, 1214 (10th Cir. 2005), also provides the government little support. In Dennison, this court upheld a search incident to arrest when the arrestee was handcuffed and placed in a different area than the one searched. This court rested this holding in part on the fact that a detainee may still gain access to a weapon even when he is under police officers' control. Id. at 1213. However, Dennison was decided before Gant, and thus did not apply the time-of-search rule. Dennison is also inapposite because the officers had a reasonable suspicion that the defendant was dangerous and able to gain access to weapons in the vehicle when his fellow arrestee was arrested on an outstanding weapons charge. Id. at 1212–14. Here, the government has never suggested that the officers had a reasonable suspicion that Ms. Knapp was dangerous and able to access weapons.

Because the search of Ms. Knapp's purse was not one of her person for the purposes of Robinson, and because the search of her purse was not actually supported by the Chimel justifications, the exception for a search incident to arrest does not apply here.

REVERSED and REMANDED.

15