J-S05014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDY SIMMONS | : | |
| | : | |
| Appellant | : | No. 175 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 13, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008799-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: September 28, 2023**

Appellant, Randy Simmons, appeals from the judgment of sentence of six months' probation, imposed following his stipulated, non-jury trial conviction for one count of possession of a controlled substance, 35 P.S. § 780-113(a)(16).  Appellant's sole claim is that the suppression court erred in holding that the arresting officer was authorized to perform a warrantless search of his backpack as a search incident to the arrest.  We affirm.

The facts are straightforward, as the testimony from the suppression hearing occupies roughly six pages of transcript.  Sergeant Brian Turack of the Harrison Township Police Department testified that on October 16, 2020, at approximately 1 p.m., he was on routine patrol around a school when he observed a male, later identified as Appellant, sitting on a bench.  Appellant appeared to be wearing dirty clothes, and Sergeant Turack believed that he

may have been sleeping. He and his partner approached Appellant, who "began to growl. He had a hood over his head." N.T. Suppression, 6/24/21, at 6. "[Appellant] was talking about the Coronavirus and Taylor Swift and a number of things." *Id.* Sergeant Turack conducted a records check and found that Appellant had two active arrest warrants for probation violations. Appellant was arrested and, during a search of his person, the officers recovered a pocketknife from Appellant's front left pocket. "And in his backpack, there was a prescription pill bottle containing what [the officer] recognized to be Suboxone strips based on [his] past training and experience. There was a name on the pill bottle that was not [Appellant]'s name." *Id.* at 7-8. The backpack was described as "[r]ight beside him." *Id.* at 8.

The trial court denied Appellant's motion to suppress, and Appellant proceeded to a stipulated, non-jury trial at the close of which he was convicted of the above-stated offense. Appellant timely filed a notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement. The trial court issued its responsive opinion. Appellant raises one claim for our review:

> Were Appellant's privacy rights under the Fourth Amendment to the United States Constitution and Article I[,] § 8 of the Pennsylvania Constitution violated when, after he was arrested on two arrest warrants and handcuffed, his backpack was opened by police, a prescription bottle inside that backpack was removed, the bottle was moved in such a way that its label could be read, the bottle was opened, and its contents inspected by the officers – all without a search-and-seizure warrant having been obtained?

Appellant's Brief at 4.

Our standard of review is well-settled:

When we review the ruling of a suppression court, we must determine whether the factual findings are supported by the record. When it is a defendant who appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Bathurst*, 288 A.3d 492, 496–97 (Pa. Super. 2023) (quoting *Commonwealth v. Brame*, 239 A.3d 1119, 1126 (Pa. Super. 2020)).

A warrantless search is presumptively unreasonable, and the Commonwealth is required to establish that an exception to the warrant requirement applies. *Commonwealth v. Martin*, 253 A.3d 1225, 1228 (Pa. Super. 2021). The exception relied upon by the Commonwealth is a search incident to arrest. In *Chimel v. California*, 395 U.S. 752 (1969), the United States Supreme Court looked to its seminal decision in *Terry v. Ohio*, 392 U.S. 1 (1968), which authorized a pat-down for weapons to protect officer safety, to define the scope of a valid search incident to arrest:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. **And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like**

> **rule.** A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 762-63 (emphasis added). Thus, the search incident to arrest exception is designed to protect officer safety and permit recovery of evidence. Only the officer safety rationale is implicated here.

This case requires a determination of whether Appellant's backpack was "within his immediate control" as contemplated by the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. Appellant conceded at the suppression hearing that the backpack was within his control in terms of physical proximity. N.T. Suppression, 6/24/21, at 12 ("I would agree this is the immediate area."). The more difficult question is whether, notwithstanding that physical proximity, the fact that Appellant was in handcuffs impeded his ability to access the backpack as a legal matter for purposes of the exception. *Id.* ("He's been placed in handcuffs and doesn't have the opportunity [to access] the bag."). *Id.* According to Appellant, the officers were authorized only to search his person:

> The testimony from the suppression hearing, it will be recalled, indicated that the prescription pill bottle was found inside Appellant's backpack. Appellant was already in hand-cuffs when the backpack was searched, and nothing Appellant did before he was arrested indicated that he was about to extract a weapon or discard anything that existed within the backpack. All the police had to do was take Appellant in hand-cuffs into custody, and take the backpack, as is, along with them. If they wished to inspect

- 4 -

the contents of the backpack, they would need to secure a search warrant for it.

Appellant's Brief at 18.

At this juncture, discussion of bright-line rules concerning this warrant exception is helpful. The first rule was established in *United States v. Robinson*, 414 U.S. 218 (1973), which held that an arrest authorized a search of the person regardless of whether the two principal justifications underlying the *Chimel* exception were present. The *Robinson* Court held it was irrelevant whether the officer feared for his or her safety, and if the officer had reason to suspect the individual possessed evidence, explaining:

> Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct.

*Id.* at 236 (footnotes omitted).

Different rules apply when the search extends beyond the person. In *New York v. Belton*, 453 U.S. 454 (1981), the High Court addressed the recurring problem of applying the search incident to arrest exception to the interior of a vehicle after its occupants are arrested. "Although the principle that limits a search incident to a lawful custodial arrest may be stated clearly enough, courts have discovered the principle difficult to apply in specific cases." *Id.* at 458. The Court emphasized the need for a bright-line rule for officers to apply in the field and held that "when a policeman has made a

lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

Automobile searches present distinct issues owing to the United States Supreme Court's view of the automobile exception to the warrant requirement. *See generally Commonwealth v. Alexander*, 243 A.3d 177, 181–88 (Pa. 2020) (discussing the history of the automobile exception under federal and Pennsylvania constitutional law). But the *Belton* holding did not turn on notions of the federal view of a reduced expectation of privacy inherent in an automobile but rather the *Belton* Court's interpretation of *Chimel*. The *Belton* Court explained that "[o]ur reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" *Belton*, 453 U.S. at 460 (quoting *Chimel*, 395 U.S. at 763) (bracketing in original)).

*Belton*, however, has been largely overruled by *Arizona v. Gant*, 556 U.S. 332 (2009), and, as relevant here, whether an arrestee was in handcuffs was important to the *Gant* analysis. The groundwork for *Gant* was laid in *Thornton v. United States*, 541 U.S. 615 (2004), which addressed whether *Belton* was limited to cases in which the officer first encounters an occupant while the occupant was inside the vehicle. The *Thornton* Court held that *Belton* applied even if the officer first encounters the occupant after the

occupant has already exited the vehicle. Justice Scalia authored a concurring opinion, concurring in the result because he believed that the search was authorized to recover evidence, but — unlike the Majority — he did not agree that **Belton** and its interpretation of **Chimel** applied to justify such a search. Justice Scalia's concurring opinion identified and rejected "three reasons why the search in this case might have been justified to protect officer safety or prevent concealment or destruction of evidence." **Id.** at 625 (Scalia, J., concurring in judgment). As relevant to this appeal, Justice Scalia was skeptical that a handcuffed and secured suspect could access his or her car for a weapon or evidence, saying that it "calls to mind Judge Goldberg's reference to the mythical arrestee 'possessed of the skill of Houdini and the strength of Hercules.'" **Id.** at 625-26 (citation omitted). He also noted that the government could identify only one case in which a handcuffed arrestee escaped from a patrol vehicle and retrieved a weapon from elsewhere. In addition, Justice Scalia observed that the validity of an officer-safety rationale need not depend on "specific instances in order to justify measures that avoid obvious risks. But the risk here is far from obvious…." **Id.** at 626. The **Chimel** Court did not permit, as a matter of routine, a search of a room other than the room in which an arrest occurs, and Justice Scalia argued that a similar result should hold in the automobile context. In sum, he posited that "if **Belton** searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." **Id.** at 629.

In **Gant**, the High Court significantly limited **Belton**. Until **Gant**, courts had interpreted **Belton** to permit a vehicular search even when the arrestee could not possibly access the passenger compartment.[1] This result was illogical, in light of the rationales justifying a search incident to arrest:

> To read **Belton** as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the **Chimel** exception—a result clearly incompatible with our statement in **Belton** that it "in no way alters the fundamental principles established in the **Chimel** case regarding the basic scope of searches incident to lawful custodial arrests." Accordingly, we reject this reading of **Belton** and hold that the **Chimel** rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

**Gant**, 556 U.S. at 343 (citation omitted).

While **Gant** and **Belton** involve automobile searches, both cases relied in large part on **Chimel**, which governs searches of a person and nearby effects, as in this case. This raises the question of whether **Gant** applies to cases not involving automobiles.

At the time of this writing, Pennsylvania appellate courts have cited **Gant** only nine times, with none discussing this scenario. We therefore examine decisions from federal courts for their persuasive value. Shortly after **Gant**, the United States Court of Appeals for the Third Circuit discussed

---

[1] "Indeed, some courts have upheld searches under **Belton** 'even when ... the handcuffed arrestee has already left the scene.'" **Gant**, 556 U.S. at 342-43 (quoting **Thornton**, 541 U.S. at 628 (Scalia, J., concurring in judgment) (ellipsis in original)).

whether **Gant** implicated searches, like this one, involving personal effects. In **United States v. Shakir**, 616 F.3d 315 (3d Cir. 2010), federal officers learned that Shakir, who was wanted for armed bank robbery, was staying at a hotel. An arrest team went to the property and saw Shakir standing at the end of a check-in line, holding a gym bag. Shakir was detained without incident and dropped the bag at his feet. The officer had difficulty placing handcuffs on Shakir due to his girth. Within five minutes, two other officers arrived with handcuffs that could accommodate Shakir. After Shakir was secured, officers searched the gym bag and discovered cash from a different armed robbery.

As an initial matter, the **Shakir** Court rejected the United States' argument that **Gant** was irrelevant to cases involving the search of an arrestee's personal items. The Court disagreed, because **Gant** "expressly stated its desire to keep the rule of **Belton** tethered to the justifications underlying the **Chimel** exception, and **Chimel** did not involve a car search." **Id.** at 318 (quotation marks and citation omitted). The Court explained that **Gant** could be read "to prohibit the search of the bag unless at the time of the search Shakir was both (1) unsecured and (2) within reaching distance of the bag." **Id.** at 320 (emphasis omitted). The panel declined to adopt this rule. Instead, it acknowledged that **Gant** "makes clear that whether a suspect is 'secured' is an important consideration" in analyzing the search. The **Shakir** Court described "the Court's references to a suspect being 'unsecured' and being 'within reaching distance' … [as] two ways of describing a single

standard rather than independent prongs of a two-part test." *Id.* Additionally, it noted that the closing language of *Gant* stated that police may search "only if the arrestee is within reaching distance of the passenger compartment" at the time of the search. *Gant*, 556 U.S. at 351. To the *Shakir* Court, the "conspicuous absence" of any mention of whether the suspect was "secured" in that reference suggests that "the Court did not regard it as an independent element that must be satisfied in order to justify a search incident to arrest." *Shakir*, 616 F.3d at 320. The panel in *Shakir* ultimately concluded that the relevant standard is whether there "remains a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container or area being searched." *Id.* at 321. In meeting this burden, the government must show "something more than a mere theoretical possibility," but "it remains a lenient standard." *Id.* Other decisions take a narrower view of *Gant's* applicability to non-vehicular searches. *See United States v. Perdoma*, 621 F.3d 745, 751 (8th Cir. 2010) (officers validly searched bag after suspect arrested and another police officer had taken control of the item; "While the explanation in *Gant* of the rationale for searches incident to arrest may prove to be instructive outside the vehicle-search context in some cases, we agree with the Government that this is not such a case.").[2]

---

[2] Judge Lazarus "disagree[s] that the instant case is analogous" to these precedents "as Simmons was neither in, nor operating, a vehicle." Concurring Statement at 2 n.2. Of course, we do not claim that the case is factually analogous to an automobile search. As explained throughout, the relevance
*(Footnote Continued Next Page)*

With this backdrop in mind, we address the parties' specific arguments.[3]

Appellant argues for a *per se* rule that he was completely secured by virtue of

_____

of the automobile search cases is that those precedents themselves address and apply ***Chimel***, which established the scope of the search incident to arrest exception to the Fourth Amendment. Thus, we believe it worthwhile to discuss whether the ***Gant*** case bears on searches outside of the automobile context. ***See United States v. Knapp***, 917 F.3d 1161, 1168 (10th Cir. 2019) ("At the outset, we note that although ***Gant*** specifically addressed the search of an automobile, its principles apply more broadly."). Of course, we do not claim that this is a universal proposition. ***See United States v. Gordon***, 895 F. Supp. 2d 1011, 1023 (D. Haw. 2012), ***aff'd***, 694 F. App'x 556 (9th Cir. 2017) ("***Gant***, which did not analyze a search of an arrestee's person, does nothing to change this binding circuit precedent regarding searches of wallets found on a suspect.").

[3] In lieu of deciding the case based on the arguments presented, our learned colleague concludes that the evidence would have been inevitably discovered as an inventory search pursuant to Appellant's arrest. Concurring Statement at 1 n.1 (citing ***Commonwealth v. Bailey***, 986 A.2d 860 (Pa. Super. 2009)). We respectfully disagree.

Judge Lazarus purports to affirm under the familiar principle that a court may do so on any ground supported by the record, but the fact that the Commonwealth did not raise this theory precludes this Court from relying on it. The record does not support the finding that the officers inevitably would have inventoried the contents of the bag, for the simple reason that nothing in the record addresses that issue. It may well be the case that "once in custody, the officers could have easily taken the proper steps to log Simmons' bag into inventory," Concurring Statement at 3, but this is pure speculation that finds no record support. As ***Bailey*** indicates, the prosecution must "establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means[.]" ***Bailey***, 986 A.2d at 862. This Court cannot cite any evidence at all, let alone a preponderance.

Worse, declaring that the evidence was admissible under that theory obviously prevents Appellant from challenging the validity of said policies. Judge Lazarus claims to "make no determinations regarding the constitutionality of the jail's or police department's specific inventory policies," Concurring Statement at 4 n.4., but this is not true: by invoking the rationale
*(Footnote Continued Next Page)*

handcuffs and, thus, there was no possibility he could access the backpack. The Commonwealth, on the other hand, argues that there is no dispute that the backpack was near Appellant and was therefore accessible. It cites as instructive **Commonwealth v. Taylor**, 771 A.2d 1261 (Pa. 2001) (OAJC), a case involving the search incident to arrest exception where the suspect was in handcuffs at the time of the search.

In **Taylor**, officers executed a search warrant at a convenience store. After locating the target of the search warrant, two officers went to the basement. There, officers observed Taylor sitting in a barber's chair with an apron over his torso, with John Mahone cutting his hair. Taylor moved his hands under the apron, and he was frisked. An officer recovered a prescription bottle containing what appeared to be crack cocaine. Taylor was placed under arrest, and Mahone was handcuffed, apparently for officer safety at that point in the encounter. Officers then "searched two coats, which were draped on a chair ten feet from Taylor and Mahone." **Id.** at 1264. More drugs were

---

*sua sponte*, Judge Lazarus necessarily concludes that such a search would indeed be constitutional under these circumstances. The Commonwealth bears the burden of establishing that the challenged evidence was not obtained in violation of Appellant's rights. **See** Pa.R.Crim.P. 581(H) ("The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). Accordingly, asserting that the inevitable discovery theory applies notwithstanding the Commonwealth's failure to raise the exception concludes that the policies (of which, it bears repeating, we know nothing) may be constitutionally applied, thereby both relieving the Commonwealth of its burden and depriving Appellant of the ability to respond. It would be fundamentally unfair to deprive Appellant of the opportunity to respond to this claim.

discovered, and both men were charged. Our Supreme Court determined that this search exceeded the scope of the search incident to arrest exception, as the coats were too far away to be readily accessible. The Commonwealth notes that the Court did not rest its conclusion on the fact that both men were handcuffed but rather the distance of the coats. Thus, in its view, **Taylor** is instructive because, unlike the coats in **Taylor**, the backpack here was readily accessible.

We find **Taylor** to be of little value. The fact that the lead opinion in **Taylor** did not base its analysis on the presence of handcuffs does not signal that the Justices in the plurality would have upheld the search if the items had been situated right next to Taylor and Mahone. Nothing in the **Taylor** opinion even indicates that an argument concerning the effect of handcuffs was made. Moreover, the **Taylor** decision pre-dates **Gant**. Thus, to the extent that the Commonwealth maintains that mere physical proximity always justifies a search, we cannot agree that this theory is compatible with **Gant**, assuming *arguendo* that the case speaks to searches like this one. **See United States v. Knapp**, 917 F.3d 1161 (10th Cir. 2019) (holding that search incident to arrest rationale did not permit search of purse located three to four feet behind arrested suspect as the suspect's hands were cuffed behind her back and police officers maintained exclusive possession of the purse).

We also reject Appellant's *per se* rule that the **Chimel** rule cannot apply if the suspect is handcuffed. Appellant has not directed our attention to any case from any jurisdiction concluding that a handcuffed suspect is simply

unable to access a backpack or some other type of personal effect that is near the suspect. We have set forth our survey of the law in this area, and it is fair to say that whether the suspect is handcuffed is certainly a factor in the analysis. But it is not the only one. The **Knapp** case specified four factors to determine whether an item is within what the panel called "an arrestee's grab area": "(1) whether the arrestee is handcuffed; (2) the relative number of arrestees and officers present; (3) the relative positions of the arrestees, officers, and the place to be searched; and (4) the ease or difficulty with which the arrestee could gain access to the searched area." **Id.** at 1168-69. Other decisions applying **Gant** to this type of fact pattern likewise emphasize the specific facts. **See United States v. Davis**, 997 F.3d 191 (4th Cir. 2021) (concluding that search incident to arrest of a backpack was not justified because the suspect was lying face-down with his hands cuffed behind his back, with three officers present, one of whom was pointing a gun at Davis). We need not decide how those factors, or any others, apply in this case. We conclude that it is sufficient to observe that Appellant relies on a *per se* rule as the basis for reversing the suppression court. We find his argument unsupported and, therefore, we conclude that the search incident to arrest exception applies.[4]

---

[4] Appellant raised his claim under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. His motion to suppress noted that our Supreme Court rejected **Belton** in **Commonwealth v. White**, 669 A.2d *(Footnote Continued Next Page)*

Finally, while Appellant has presented a single issue for our review, his argument encompasses two distinct claims. We have addressed and rejected the first of these. The remaining claim relies upon ***Arizona v. Hicks***, 480 U.S. 321 (1987), which held that an officer performed a search by moving some stereo equipment to look for its serial numbers on reasonable suspicion, but not probable cause, that the equipment was stolen. The officers were in an apartment due to a shooting, *i.e.*, an exigency unrelated to the stereo equipment. The High Court determined that "taking action, unrelated to the

_____

896 (Pa. 1995), and therefore our constitutional provision provides greater protections in this area. As the ***White*** Court stated:

> Merely arresting someone does not give police *carte blanche* to search *any* property belonging to the arrestee. Certainly, a police officer may search the arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence, but otherwise, absent an exigency, the arrestee's privacy interests remain intact as against a warrantless search. In short, there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody, as stated above.

***Id.*** at 902 (footnotes omitted; emphasis in original).

We do not interpret ***White*** to stand for the proposition that Article I, Section 8 provides greater protections in the sense that the search incident to arrest exception cannot apply if the suspect is handcuffed. Moreover, aspects of the ***White*** holding are more in line with the later decision in ***Gant***. ***See Gant***, 556 U.S. at 344-45 ("[T]he State seriously undervalues the privacy interests at stake. … It is particularly significant that ***Belton*** searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space."). Because ***White*** references the "immediate area which the person occupies" standard, we do not find that Appellant has preserved a claim that the Pennsylvania Constitution supports the proposed *per se* rule.

- 15 -

objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Id.* at 325. In the case *sub judice*, Appellant argues that the officers performed several searches, by (1) opening the backpack; (2) removing a pill bottle; (3) manipulating the pill bottle; and (4) opening the pill bottle to look inside. Appellant argues that the Commonwealth must establish that each of these searches satisfied an exception to the warrant requirement.

The Commonwealth argues that this claim is waived as Appellant did not raise it as a basis to suppress. We agree. "[A]ppellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Moser***, 188 A.3d 478, 483–84 (Pa. Super. 2018) (quoting ***Commonwealth v. Little***, 903 A.2d 1269, 1272–73 (Pa. Super. 2006)).

Appellant's pre-trial motion did not raise this claim, and Appellant did not raise it in any fashion at the suppression hearing. We also observe that our conclusion that the backpack was properly searched under the ***Chimel*** rationale authorized the search. In ***Hicks***, the act of moving equipment to see serial numbers was a search that was wholly unjustified, as it was unrelated to the exigency that allowed the officers to enter the apartment without a warrant. Here, the search incident to arrest exception authorized a

search of the backpack. Appellant argued only that the police had no lawful right of access to the backpack by virtue of his being handcuffed, not that the officers exceeded the scope of an otherwise authorized search. We therefore agree with the Commonwealth that this argument is waived.

Judgment of sentence affirmed.

Judge McLaughlin concurs in the result.

Judge Lazarus files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2023