**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 23, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

WILLIAM MONTGOMERY,

    Plaintiff - Appellant,

v.

BRETT COHN; TREVOR CUAZ,

    Defendants - Appellees.

No. 23-1101
(D.C. No. 1:22-CV-00011-PAB-MEH)
(D. Colo.)

_____

### ORDER AND JUDGMENT*
_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

William Montgomery, proceeding pro se, appeals from the district court's

order dismissing his suit under 42 U.S.C. § 1983 against law enforcement officers

Brett Cohn and Trevor Cuaz on the grounds of qualified immunity. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

---

\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] This appeal is like several others filed by Mr. Montgomery. He has a history of entering Walmart stores with previously purchased items like RV lights stuffed in his pockets, claiming that he is thinking about returning them, but he never does. Instead, he selects some new merchandise, pays for it, declines a bag, and takes a

MONTGOMERY'S COMPLAINT

In 2020, Mr. Montgomery entered a Walmart store located in Centennial, Colorado. He alleged that when he finished shopping, he paid for his purchases, declined plastic bags for environmental reasons, and proceeded towards the northern exit with his items in a shopping cart. However, before he reached the exit, he decided to take a detour through the bakery section. When he discovered the bakery did not have what he was looking for, he proceeded to the northern exit, where he was asked by a Walmart employee to show a receipt. When he refused, the employee blocked his path and continued to ask for a receipt. Mr. Montgomery changed course and tried to leave through the southern exit; however, his path was blocked by a second employee who had been told by the first employee not to let him leave the store.

Mr. Montgomery was escorted by a third employee into a loss prevention office. In the meantime, the second employee contacted the Arapahoe County Sheriff's Office and reported that the store had detained a shoplifting suspect who refused to produce a receipt. Sergeant Cohn and Deputy Cuaz arrived on the scene shortly thereafter.

---

circuitous route back through the store with the unbagged items before trying to exit the store. His apparent goal to is to induce employees to detain him for shoplifting and contact law enforcement. When Mr. Montgomery is searched and/or arrested, he sues under § 1983 for the alleged violation of his Fourth Amendment rights. *See*, *e.g.*, *Montgomery v. Lore*, No. 23-1106, 2023 WL 8613523, at *1-2 (10th Cir. Dec. 13, 2023); *Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212, *1-2 (10th Cir. Apr. 18, 2022).

Sergeant Cohn began his investigation by asking Mr. Montgomery to provide his identification.  He then asked the third employee if Mr. Montgomery had a receipt and was told that he did not.  According to Mr. Montgomery, Sergeant Cohn asked him numerous times to show him a receipt, and when he refused, he was told that he would be cited for shoplifting.  Sergeant Cohn then tried to collect what he believed was the stolen merchandise, but Montgomery refused, saying "'[t]hat's my stuff, man.'"  R., vol. I at 14.  Sergeant Cohn turned to Deputy Cuaz "and said . . . 'Hey Cuaz, come here, he doesn't want to let us take his stuff, so we need to put him in cuffs.'"  *Id*. at 15.  After Mr. Montgomery was placed in handcuffs, Deputy Cuaz patted him down and emptied his pockets, removing "his cell phone, keys, wallet, medical spit jar, two RV lights, a tub of sour cream, and a store receipt for some of [the] recently purchased merchandise."  *Id*.

After comparing the merchandise with the receipt discovered during the search, the officers determined that Mr. Montgomery had paid for some items, but not others.  However, Mr. Montgomery alleges that Deputy Cuaz's search was flawed because he failed to discover "a separate receipt for his non-food items."  *Id*.  The handcuffs were removed, and Mr. Montgomery was issued a summons and complaint for shoplifting the non-food items and RV lights.

A few months later, the district attorney dropped the charges and Walmart returned the items to Mr. Montgomery.  Nearly two years later, Mr. Montgomery sued under § 1983 for three Fourth Amendment violations, namely (1) unreasonable search of his person; (2) unreasonable seizure of property; and (3) unlawful arrest.

3

DISTRICT COURT PROCEEDINGS

Sergeant Cohn and Deputy Cuaz moved to dismiss on the grounds of qualified immunity. The magistrate judge recommended that the complaint be dismissed. Mr. Montgomery objected. The district court adopted the recommendation and dismissed the claims for unreasonable search and seizure on the grounds that it was not clearly established that (1) Sergeant Cohn and Deputy Cuaz lacked arguable probable cause for the arrest and (2) Mr. Montgomery could not be searched incident to the arrest. This appeal followed.

STANDARD OF REVIEW

"We review de novo the grant of a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6) due to qualified immunity." *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir. 2019). In conducting our review, "we accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) (brackets and internal quotation marks omitted). "[T]he district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. Therefore, extraneous arguments in an appellate brief may not be relied upon to circumvent pleading defects." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (citation omitted).

Although we construe Mr. Montgomery's pro se filings liberally, we cannot act as his advocate, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and we "will not supply additional factual allegations to round out

4

[his] complaint or construct a legal theory on [his] behalf," *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

QUALIFIED IMMUNITY

In response to the motion to dismiss on the grounds of qualified immunity, Montgomery had the burden to show that (1) "a constitutional violation occurred," and (2) "the constitutional right was clearly established at the time of the alleged violation." *Doe*, 912 F.3d at 1289 (internal quotation marks omitted). "A court evaluating qualified immunity is free to exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. . . ." *Id*. (brackets and internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Doe*, 912 F.3d at 1288 (brackets and internal quotation marks omitted).

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Redmond*, 882 F.3d at 935 (brackets

and internal quotation marks omitted).  "The dispositive question is whether the violative nature of *particular* conduct is clearly established.  We therefore must determine whether a right is clearly established in light of the specific context of the case, not as a broad general proposition." *Id*. (citation and internal quotation marks omitted).  In other words, "a right is clearly established when a precedent involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal quotation marks omitted).

"In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (internal quotation marks omitted).  "This high bar ensures qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Redmond*, 882 F.3d at 935 (internal quotation marks omitted).

DISCUSSION

*Unlawful Arrest*

A police officer may arrest a person without a warrant if he has probable cause to believe the person committed a crime.  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  If probable cause was lacking, the qualified immunity analysis turns on "whether extant clearly established law [at the time of the events at issue] would have placed a reasonable, similarly situated police officer on notice that *no* probable cause existed for the warrantless arrest[]." *Quinn v. Young*, 780 F.3d 998,

6

1007 (10th Cir. 2015). "As our qualified-immunity jurisprudence permits us to do, we exercise our discretion to proceed straight to the latter question and resolve this claim on the clearly-established-law prong of our qualified-immunity test." *Id.*

"As a practical matter, we implement this clearly-established-law standard by asking whether there was arguable probable cause for an arrest—if there was, a defendant is entitled to qualified immunity." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (brackets and internal quotation marks omitted). "In other words, in the § 1983 qualified-immunity context, an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses arguable probable cause." *Id.* at 1140 (internal quotation marks omitted).

Here, there was arguable probable cause based on the following allegations in the complaint, including (1) dispatch was told that Walmart had detained a suspect for shoplifting; (2) Sergeant Cohn began an investigation as soon as he arrived on the scene; (3) during the investigation, Sergeant Cohn asked a Walmart employee whether Mr. Montgomery had a receipt and he was told that he did not; and (4) Mr. Montgomery refused to produce a receipt despite multiple requests to do so.

Mr. Montgomery's reliance on *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *vacated sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985), *aff'd on reconsideration*, 796 F.2d 1307 (10th Cir. 1986) is misplaced. In each of these cases, the arresting officer arrived on the scene after the alleged crime occurred and relied

7

solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect. *See Baptiste*, 147 F.3d at 1257 (concluding that the officers lacked reasonable grounds "to believe the shoplifting allegations made by store security guards in light of the conduct recorded on [a] videotape; [the suspect's] explanation; her production of receipts[;] . . . and the search of her bag, purse, and pockets, which revealed no stolen merchandise"); *Lusby*, 749 F.2d at 1430 (noting the arresting officers arrived on the scene, "picked up the [suspects], handcuffed and frisked them and took them to jail without interviewing witnesses or conducting any inquiry to determine whether probable cause existed to arrest them"). These cases do not "squarely govern the present case," *Aldaba*, 844 F.3d at 877 (internal quotation marks omitted).

*Search Incident to Arrest*

"In general, warrantless searches are per se unreasonable." *United States v. Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019). However, "[o]ne exception [to the general rule] allows arresting officers to search the *person* of the accused when legally arrested." *Id*. (internal quotation marks omitted) (emphasis added). Thus, if Mr. Montgomery was under arrest the search did not violate the Fourth Amendment.

In his objections to the magistrate judge's recommendation, Mr. Montgomery stated that because he was never transported to the police station and booked, Deputy Cuaz could not search him. But in its order overruling his objections, the district court determined that the argument was waived because Mr. Montgomery did

not raise the same "detailed arguments" in response to defendants' motion to dismiss that he presented in his objections. R., vol. I at 112. Nonetheless, the court determined that even if the issue had been properly raised, "[Mr.] Montgomery was under arrest." *Id*. at 113.

While there is no litmus-paper test for determining when an investigative detention enters the realm of an arrest, an arrest is distinguished from an investigative detention "by the involuntary, 'highly intrusive' nature of the encounter." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007). "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Id*. at 1115-16 (brackets and internal quotation marks omitted); *see Manzanares v. Higdon*, 575 F.3d 1135, 1150 (10th Cir. 2009) (holding that "it has been clear for some time that the use of handcuffs generally converts a detention into an arrest"). But we need not decide whether Mr. Montgomery was under arrest because it was not clearly established that a reasonable police officer would have understood that Mr. Montgomery *was not under arrest* when he was placed in handcuffs. *See Redmond*, 882 F.3d at 935.

We disagree with Mr. Montgomery that the decision in *Knowles v. Iowa*, 525 U.S. 113 (1998), requires a different outcome. Knowles was stopped by an Iowa policeman for a traffic violation. The officer issued him a citation rather than arresting him. But after the citation was issued and Knowles was free to go, the officer conducted a full search of the car in which he uncovered marijuana and a pot pipe. Knowles maintained that "the search could not be sustained under the

9

'search incident to arrest' exception . . . because he had not been placed under arrest." *Id*. at 114.

The Court agreed with Knowles that there was no right to search his person or vehicle incident to being issued a citation because neither rationale for the search incident to arrest exception—officer safety or the need to preserve evidence—was present. *See id*. at 116-17. But *Knowles* is inapposite because Mr. Montgomery was placed under arrest before he was searched. "It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is . . . an exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973) (internal quotation marks omitted).

## CONCLUSION

The judgment of the district court is affirmed. Appellant's motion for leave to proceed *in forma pauperis* is granted.

Entered for the Court

Gregory A. Phillips
Circuit Judge