# In the Iowa Supreme Court

No. 23–1218

Submitted February 17, 2025—Filed June 20, 2025

**State of Iowa,**

Appellee,

vs.

**Patrick Wayman Scullark, Jr.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, judge.

The State seeks further review of the court of appeals decision reversing the district court order denying suppression of evidence found in the defendant's fanny pack during a search incident to arrest. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

Oxley, J., delivered the opinion of the court, in which all justices joined except McDermott, J., who filed a dissenting opinion.

Martha J. Lucey, State Appellate Defender, and Josh Irwin (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Timothy Hau (argued) and Thomas J. Ogden (until withdrawal), Assistant Attorneys General, for appellee.

**Oxley, Justice.**

Patrick Scullark, Jr. was charged with possessing a controlled substance after police officers searched the fanny pack that he was wearing at the time of his arrest on unrelated charges and that he attempted to pass to another person before being handcuffed. Scullark contends that the district court should have suppressed the evidence of the methamphetamine found in his fanny pack, arguing that the search violated the United States and Iowa Constitutions because he could no longer access the fanny pack at the time it was searched. The court of appeals agreed and reversed the district court order denying Scullark's motion to suppress.

Incident to a lawful arrest, police officers are authorized to conduct a full search of the arrestee's person. Because Scullark was wearing the fanny pack around his waist at the time of his arrest, we conclude that this was a valid search of his person that did not violate either the United States Constitution or the Iowa Constitution. As explained more fully below, we vacate the court of appeals decision and affirm the district court order denying Scullark's motion to suppress.

### I. Factual Background and Proceedings.

On April 12, 2022, Officer Jacob Bolstad investigated a domestic abuse call involving Scullark. Officer Bolstad went to the residence Scullark was known to be at, where he found Scullark sitting on the tailgate of a truck outside. Scullark was talking on the phone and was in an emotional, distressed state about going back to jail. When Officer Bolstad attempted to talk with Scullark, Scullark bolted inside the residence despite Officer Bolstad's order to stay outside. Officer Bolstad followed. Inside the residence, Scullark remained agitated and emotional. He was adamant that he could not go back to jail.

During their encounter, Scullark was wearing a fanny pack around his waist. Officer Bolstad told Scullark that he was going back to jail and started to handcuff him. Scullark pulled away to remove the fanny pack from his waist, told Officer Bolstad "don't touch me right now," and attempted to hand the fanny pack and other items to one of his companions standing nearby. At this point, Scullark was not yet handcuffed, and Officer Bolstad was the only officer on the scene. To prevent escalating the already emotional situation, Officer Bolstad did not oppose the handoff. After Scullark handed the items to his companion, Officer Bolstad handcuffed Scullark behind his back and advised the companion to set the items down because he was going to search the items and bring them to the jail.

Other officers arrived at the scene as Officer Bolstad led Scullark out of the residence to the patrol car. As the two walked out, Officer Bolstad picked up the fanny pack and other items. He testified at the suppression hearing that, at this point, Scullark was unable to access the fanny pack and its contents.

Two of Scullark's companions followed Officer Bolstad and Scullark outside, protesting the search of the fanny pack and its transport to the jail. They attempted to grab the contents of the fanny pack from the officers as Officer Bolstad conducted a pat-down search of Scullark outside the patrol car and another officer searched the fanny pack nearby. Officer Bolstad joined the search of Scullark's fanny pack after placing Scullark in the back of his patrol car. The officers found a clear baggy containing methamphetamine inside the fanny pack.

The State charged Scullark with possession of a controlled substance with intent to deliver and failure to affix a drug tax stamp. Scullark filed a motion to suppress the contents of the fanny pack, arguing that the search violated his rights under the Fourth Amendment to the United States Constitution and

article I, section 8 of the Iowa Constitution. The district court found the search of the fanny pack valid as a search incident to arrest (SITA) and denied Scullark's motion to suppress. In 2023, Scullark entered a conditional guilty plea to all counts, preserving his right to challenge the denial of his motion to suppress.

Scullark challenges the denial of his motion to suppress on two grounds: (1) the SITA exception does not apply when an arrestee is unable to access the item at the time it is searched, and (2) the State must establish that the officers were looking for a weapon or for evidence of the offense of arrest. We transferred the appeal to the court of appeals, which reversed the district court's denial of Scullark's motion to suppress. The court of appeals agreed with Scullark that the search did not satisfy the SITA exception because he could not access the fanny pack at the time it was searched.

We granted the State's application for further review to address whether a search of a defendant's fanny pack that he passed to another person before being handcuffed violates either the United States Constitution or the Iowa Constitution. We conclude that it does not. We therefore vacate the court of appeals decision and affirm the district court order denying Scullark's motion to suppress.

**II. Analysis.**

**A. Jurisdiction to Consider the Appeal Under Iowa Code Section 814.6(3).** The State challenges the court of appeals' interpretation of Iowa Code section 814.6(3) (2024). Iowa Code section 814.6(1)(*a*)(3) prevents a defendant from appealing a guilty plea to a nonclass "A" felony unless the defendant can first establish good cause. Subsection (3) provides an exception to that rule:

> A conditional guilty plea that reserves an issue for appeal shall only be entered by the court with the consent of the prosecuting attorney and the defendant or the defendant's counsel. An appellate court shall have jurisdiction over only conditional guilty pleas that comply

with this section and when the appellate adjudication of the reserved issue is in the interest of justice.

*Id.* § 814.6(3). The court of appeals construed the requirement that the appeal be "in the interest of justice" to mean when appellate review would be "fair and right." (Quoting *Interests of Justice*, *Black's Law Dictionary* 971 (11th ed. 2019).)

Here, the State and Scullark agreed to a conditional guilty plea that explicitly allowed Scullark to challenge the suppression ruling, and the district court accepted the conditional guilty plea. The issue on appeal is the same issue reserved by the conditional guilty plea, and success on appeal of that issue would give Scullark some relief. *Cf. State v. Treptow*, 960 N.W.2d 98, 108–09 (Iowa 2021) (holding that "a legally sufficient reason is a reason that would allow a court to provide some relief" for purposes of establishing good cause under Iowa Code section 814.6(1)(*a*)(3)). Scullark satisfied section 814.6(3)'s "in the interest of justice" requirement.

**B. Unreasonable Search of the Fanny Pack.** Scullark argues that evidence from his fanny pack was obtained in violation of his right to be free from unreasonable searches and seizures. We review challenges to the denial of a motion to suppress on constitutional grounds de novo. *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011) ("Because this case concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo."). "We independently evaluate the totality of the circumstances found in the record, including the evidence introduced at . . . the suppression hearing . . . ." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). "We give deference to the district court's findings of fact" but are not bound by them. *Id.*

The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Under the Fourth Amendment, a warrantless search is per se unreasonable, and therefore, unconstitutional, "subject only to a few narrow and well-delineated exceptions." *Williams v. United States*, 401 U.S. 646, 660 n.1 (1971) (Brennan, J., concurring in the result). One such exception to the warrant requirement is a search conducted incident to a lawful arrest. *See, e.g.*, *Chimel v. California*, 395 U.S. 752, 763 (1969) (limiting the scope of a search incident to a lawful custodial arrest to the arrestee's person and the area within his immediate control—i.e., "the area from within which [one] might gain possession of a weapon or destructible evidence").

Similarly, article I, section 8 of the Iowa Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated . . . ." We have recognized similar warrant exceptions under the Iowa Constitution. *See State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004) ("Exceptions recognized by this court are searches based on consent, plain view, probable cause coupled with exigent circumstances, *searches incident to arrest*, and those based on the emergency aid exception." (emphasis added)). While our "interpretations of section 8 have often 'tracked with prevailing federal interpretations' of the Fourth Amendment," *State v. Burns*, 988 N.W.2d 352, 360 (Iowa 2023) (quoting *Kain v. State*, 378 N.W.2d 900, 902 (Iowa 1985)), "we are not 'compel[led]' to follow that path," *id.* (alteration in original) (quoting *State ex rel. Kuble v. Bisignano*, 28 N.W.2d 504, 508 (Iowa 1947)). "It follows that if a federal interpretation of the Fourth Amendment is not consistent with the text and history of section 8, we may conclude that the federal interpretation should not govern our interpretation of section 8." *Id.*

Scullark argues that the search of his fanny pack violated his constitutional rights under the Fourth Amendment and article I, section 8 because (1) he was unable to access the fanny pack at the time the officers searched it, and (2) the State failed to establish that the officers were looking for a weapon or for evidence of the offense of the arrest.

In determining whether an exception to the warrant requirement applies, we assess the officers' conduct using an objective standard. *State v. Simmons*, 714 N.W.2d 264, 272 (Iowa 2006). Therefore, the officers' subjective motivations for conducting the search are irrelevant. *Id.* ("A search's legality does not depend on the actual motivations of the police officers involved in the search.").

1. *Determining the proper context of the search.* The SITA exception has developed in three contexts: (1) searches of the area within the arrestee's immediate control, (2) searches of the arrestee's person, and (3) searches of vehicles incident to arrest, *see Chimel*, 395 U.S. at 763 (limiting the scope of a SITA to "the arrestee's person and the area 'within his immediate control' "); *United States v. Robinson*, 414 U.S. 218, 235–36 (1973) (authorizing full searches of the person incident to arrest); *Arizona v. Gant*, 556 U.S. 332, 351 (2009) (deciding the appropriate scope of a search of a vehicle incident to a recent occupant's arrest). We must decide whether the search of the fanny pack at issue here was a *Robinson*-type search of Scullark's person or a *Chimel/Gant*-type search of the area within his immediate control.

The seminal decision establishing the scope of a search of the area within the arrestee's immediate control is *Chimel*, 395 U.S. 752. In *Chimel*, police officers arrested a defendant in his home pursuant to an arrest warrant. *Id.* at 753. The officers then searched the entirety of the defendant's three-story home premised only "on the basis of the lawful arrest." *Id.* at 753–54. The United States

Supreme Court held that, incident to a lawful arrest, officers can search "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. *Chimel* also set out the justifications underlying the SITA exception. A search of the person and the area within his immediate control "serve[s] the dual purposes of protecting arresting officers and safeguarding any evidence the arrestee may seek to conceal or destroy." *Vance*, 790 N.W.2d at 786 (citing *Chimel*, 395 U.S. at 762–63).

Searches of the arrestee's person are treated differently from a search of the area within the arrestee's reach. *Robinson*, 414 U.S. at 224 ("Examination of this Court's decisions shows that these two propositions have been treated quite differently."). The Supreme Court recognized that "[t]he validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged until the [*Robinson*] case." *Id.* But "[t]he validity of the second proposition, while likewise conceded in principle, has been subject to differing interpretations as to the extent of the area which may be searched." *Id.* In *Robinson*, a police officer searched the arrestee's coat pocket and a cigarette pack he found in it incident to a lawful custodial arrest. *Id.* at 221–23. The Court set out a categorical rule that officers may conduct a full search of the arrestee's person and the items immediately associated with the person without regard to the justifications supporting the SITA exception. *Id.* at 235–36.

> [The] intrusion [of a custodial arrest] being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*Id.* at 235. The validity of the search does not depend on a later determination about the likelihood that officers would have found weapons or evidence in the specific situation. *Id.* Rather, by virtue of a lawful arrest, an officer is authorized to search the arrestee's person, his pockets, and physical items immediately associated with him. *See Riley v. California*, 573 U.S. 373, 393 (2014).

The Court expounded on the *Robinson* rule in *Riley v. California. Id.* at 386. *Riley* involved the search of a cellphone incident to arrest. *Id.* at 378. In declining to extend *Robinson* to digital data, the Court did not "overlook *Robinson*'s admonition that searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence,' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.'" *Id.* at 386 (quoting *Robinson*, 414 U.S. at 235). The Court also noted that "*Robinson*'s categorical rule strikes the appropriate balance in the context of physical objects." *Id.* Maintaining that categorical rule for physical items, the Court distinguished searches of digital data found on the person: "A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom." *Id.* at 393.

Likewise, under the Iowa Constitution, we have historically recognized an officer's broad authority to search the arrestee's person incident to a lawful custodial arrest.

> It is usual and proper for police officers, upon the arrest of felons to subject them to search and take from them articles found upon their persons. . . . Surely there can be no rule of law forbidding a police officer upon the arrest of one charged with a felony, from making a close and careful search of the person of the individual for stolen property, instruments used in the commission of crimes, or any article which may give a clue to the commission of crime or the

identification of the criminal. This too may be done promptly on arrest, and not delayed for authority from a court or a superior. The offender would speedily dispose of all such articles which would be found upon his person that might lead to the discovery of crime.

*Reifsnyder v. Lee*, 44 Iowa 101, 103 (1876). It is a well-settled rule that police officers have inherent authority to search the arrestee's person incident to arrest without a warrant. *State v. Kilby*, 961 N.W.2d 374, 385 (Iowa 2021) (McDonald, J., concurring specially). "[T]he greater power to arrest necessarily includes the lesser power to search." *Id.* at 386.

Indeed, we have previously adopted and applied the categorical rule from *Robinson* to article I, section 8 challenges. *See, e.g.*, *State v. Hunt*, 974 N.W.2d 493, 496–97, 499 (Iowa 2022) ("And if an officer may lawfully arrest a person, then the officer may perform a warrantless search incident to that arrest. The search incident to arrest would, in turn, justify the warrantless seizure of the contraband [found in the defendant's pocket]." (citations omitted)); *State v. Cook*, 530 N.W.2d 728, 731 (Iowa 1995) ("The full search of the arrestee's person 'is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' " (quoting *Robinson*, 414 U.S. at 235)), *overruled in part on other grounds by*, *State v. Doran*, 563 N.W.2d 620 (Iowa 1997) (en banc), *overruled in part by*, *Knowles v. Iowa*, 525 U.S. 113 (1998); *State v. Farrell*, 242 N.W.2d 327, 329 (Iowa 1976) ("A search of the person is permissible as an incident to lawful arrest, even when the offense is only a minor moving traffic violation.").

The federal SITA exception "trilogy" ends with *Arizona v. Gant*, which determined the appropriate scope of the search of a vehicle incident to arrest. 556 U.S. at 351; *see also Riley*, 573 U.S. at 374 ("The trilogy concludes with *Arizona v. Gant* . . . ." (citations omitted)). In *Gant*, police officers searched the

defendant's vehicle after they arrested him for driving with a suspended license. 556 U.S. at 335. At the time of the search, the arrestee was handcuffed and in the back of the patrol car. *Id.* The Court determined that officers may, without a warrant, "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. This latter holding authorizing searches if "it is reasonable to believe the vehicle contains evidence of the offense of arrest" is based on "circumstances unique to the automobile context." *Id.* at 335, 351. *Gant* effectively overruled *New York v. Belton*, which had allowed police officers to contemporaneously search the passenger compartment of an automobile and any containers found therein incident to a lawful arrest of an occupant of the vehicle. 453 U.S. 454, 460–61 (1981).

After *Gant*, we decided *State v. Gaskins*, 866 N.W.2d 1 (Iowa 2015). In *Gaskins*, police officers searched a locked safe in the arrestee's vehicle incident to arrest after the arrestee was handcuffed and placed in the back of the patrol car. *Id.* at 3. In holding the search of the safe invalid, "[w]e approve[d] *Gant*'s 'reaching distance' rationale as an appropriate limitation on the scope of searches incident to arrest under article I, section 8 of the Iowa Constitution because that limitation is faithful to the underlying justifications for warrantless searches incident to arrest." *Id.* at 13.

Scullark argues that the reaching-distance rule of *Gant* and *Gaskins* applies to the search at issue here instead of the categorical *Robinson* rule. Scullark asserts that under *Gant* and *Gaskins*, the search of his fanny pack violated both the Fourth Amendment and article I, section 8 because he was unable to access the fanny pack at the time it was searched. We disagree. We

conclude that because the fanny pack was attached to his person at the time of the arrest, this is a search of the person, governed by *Robinson*—rather than a search of the area within his immediate control, governed by *Chimel, Gant,* or *Gaskins.*

Starting with his argument under the Fourth Amendment, *Gant* did not modify the rule pertaining to searches of the arrestee's person and the items immediately associated with him. *Robinson* still governs these searches. *See People v. Cregan,* 10 N.E.3d 1196, 1203 (Ill. 2014) ("*Gant* does not apply to a search incident to arrest of the defendant's person or items immediately associated with the defendant's person. The search in those circumstances is still controlled by the Supreme Court's decision in *Robinson.*").

The language of the majority opinion in *Gant,* Justice Alito's dissent, and the subsequent *Riley* opinion inform our conclusion. As Justice Alito stated in his *Gant* dissent: "The first part of the Court's new two-part rule—which permits an arresting officer to search the area within an arrestee's reach at the time of the search—applies, at least for now, only to vehicle occupants and recent occupants . . . ." 556 U.S. at 363–64 (Alito, J., dissenting). Then in *Riley,* the Court took a limited view of the majority opinion in *Gant* by referencing it as a case "which analyzed searches of an arrestee's vehicle" and "authorize[d] police to search a vehicle 'only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.' " *Riley,* 573 U.S. at 384–85 (quoting *Gant,* 556 U.S. at 343). The *Riley* Court also noted that "[l]ower courts applying *Robinson* and *Chimel* . . . have approved searches of a variety of personal items carried by an arrestee." *Id.* at 392.

Although other courts have extended *Gant* outside of the vehicle context, *see, e.g., United States v. Davis,* 997 F.3d 191, 197 (4th Cir. 2021) (applying *Gant*

to the search of a backpack the arrestee dropped prior to arrest); *United States v. Knapp*, 917 F.3d 1161, 1168 (10th Cir. 2019) (extending *Gant*'s principles to a purse near the arrestee at the time of search and limiting *Robinson* to searches of clothing and containers concealed under or within the clothing); *United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010) (applying *Gant* to the search of a bag the arrestee was holding at the time of arrest), we find more persuasive those federal cases that have not, *see, e.g.*, *United States v. Perez*, 89 F.4th 247, 256, 259 (1st Cir. 2023) (stating that "*Gant* did not address carried personal property at all," and the *Robinson* rule would continue to govern searches "of personal items carried by an arrestee" (quoting *Riley*, 573 U.S. at 392)); *United States v. Perdoma*, 621 F.3d 745, 752 (8th Cir. 2010) ("*Gant* elaborates upon the circumstances in which an arrestee no longer has the possibility to reach into the 'passenger compartment' of his vehicle, and the Court's discussion of whether the arrestee is no longer 'unsecured and within reaching distance' of that area must be understood in that limited context. The Court focuses exclusively on how the rule will affect *vehicle* searches . . . ." (citations omitted) (quoting *Gant*, 556 U.S. at 343)). We therefore find that the reaching-distance rule of *Gant* does not apply to searches of the arrestee's person incident to arrest. *Robinson* still governs these searches.

We reach the same conclusion under the Iowa Constitution. Like *Gant*, *Gaskins* did not change the standard for searches of the arrestee's person incident to arrest. To determine the validity of a search of the arrestee's person, we likewise look to *Robinson*. *See Hunt*, 974 N.W.2d at 496–97, 499 (applying *Robinson* to a challenge to contraband found in an arrestee's pocket under both the Fourth Amendment and article I, section 8).

2. *Was Scullark's fanny pack part of his person?* We still need to determine whether the search of an arrestee's person incident to an arrest allows a police officer to also search a fanny pack on the arrestee's person at the time the officer initiates an arrest. In other words, what is included in the "person" that can be searched incident to his arrest? As the Kentucky Supreme Court recently explained:

> [I]f the [bag] is properly considered part of [the defendant's] "person," then the search was lawful as no additional justification for the search other than it being incident to his arrest was needed. However, if the [bag] was instead "the area within his immediate control," we would then need to address whether the search of the [bag] was justified based on officer safety or the preservation of evidence.

*Commonwealth v. Bembury*, 677 S.W.3d 385, 396–97 (Ky. 2023).

To determine the proper scope of a search of an arrestee's person, we look to the time of arrest. *See Robinson*, 414 U.S. at 226 ("*When an arrest is made*, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." (emphasis added) (quoting *Chimel*, 395 U.S. 762–63)). Consistent with the "jealously guarded" SITA exception, the proper scope of the time of arrest rule is narrow; "[i]t does not extend to all articles in an arrestee's constructive possession, but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest." *State v. Byrd*, 310 P.3d 793, 799 (Wash. 2013) (quoting *State v. Ortega*, 297 P.3d 57, 60 (Wash. 2013) (en banc)).

Officers are authorized to search not only the person but also those objects which are closely related to and immediately associated with the person. *Preston v. United States*, 376 U.S. 364, 367 (1964) ("This right to search and seize without a search warrant extends to things under the accused's immediate control . . . ."

(citations omitted)). As the United States Court of Appeals for the Seventh Circuit explained:

> The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried. To remedy this anatomical deficiency[,] . . . many individuals carry purses or shoulder bags to hold objects they wish to have with them. Containers such as these, while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person. To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning.

*United States v. Graham*, 638 F.2d 1111, 1114 (7th Cir. 1981).

Because police officers necessarily must make quick ad hoc decisions when determining how, where, and what to search, they need to know what items they are authorized to search without triggering the need for additional justifications. *See Robinson*, 414 U.S. at 235 ("A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search."). The time-of-arrest rule sets a bright-line rule that allows officers to search the arrestee's person and any items in the arrestee's actual and exclusive possession at the time of the arrest or immediately preceding it. This limited search "constitute[s] only minor additional intrusions compared to the substantial government authority exercised in taking [the arrestee] into custody." *Riley*, 573 U.S. at 392.

Full *Robinson* searches of the person ensure officer safety during "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." 414 U.S. at 234–35. "When police take an arrestee into custody, they also take possession of his clothing and personal effects, any of which could contain weapons and evidence." *Byrd*, 310 P.3d at

798. Thus, "it is reasonable to allow for an officer to protect himself by searching items he places in his patrol car and transports to the police station." *State v. Allen*, No. 06–1770, 2007 WL 2964316, at *5 (Iowa Ct. App. Oct. 12, 2007); *cf. Illinois v. Lafayette*, 462 U.S. 640, 646–48 (1983) (explaining that another governmental interest in searching any container or article found on the arrestee, incident to incarcerating an arrestee, is to inventory personal property and protect officers against possible false claims of theft).

Scullark relies on *Gaskins*, but like *Gant*, *Gaskins* involved the search of a vehicle incident to the driver's arrest. The locked safe that the officers searched in *Gaskins* was never on or attached to the arrestee's person. *See Gaskins*, 866 N.W.2d at 3–4. Here, however, the fanny pack was physically attached around Scullark's waist at the time Officer Bolstad initiated Scullark's arrest by attempting to place him in handcuffs. It was only at this point that Scullark removed and handed the fanny pack to his companion. We believe this is sufficient to conclude that the fanny pack was immediately associated with Scullark. The fanny pack was an extension of his person, much like his pockets, the search of which requires no additional justification beyond lawful arrest. *See Robinson*, 414 U.S. at 235 ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."); *see also Riley*, 573 U.S. at 393 (explaining "that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items" but not to digital data); 68 Am. Jur. 2d *Searches and Seizures* § 276, at 512–13 (2020) (noting that a purse is considered an extension of the person much like the person's clothing or pockets).

Because the police officers needed no additional justification to search the fanny pack, we conclude that the State was not required to show the officers' reasons for conducting the search. *See Robinson*, 414 U.S. at 235–36. "Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that [he] was armed." *Id.* at 236 (footnote omitted). We do not inquire into the officers' reasons for conducting the search of the arrestee's person because "[t]he interests justifying search are present whenever an officer makes an arrest." *Virginia v. Moore*, 553 U.S. 164, 177 (2008); *see also Robinson*, 414 U.S. at 234–35 (explaining that the close contact with suspects when making an arrest and transporting them to the jail, as opposed to the "fleeting contact" involved with "Terry-type stop[s,] . . . is an adequate basis for treating all custodial arrests alike for purposes of search justification"); *Byrd*, 310 P.3d at 796 ("[S]earches of the arrestee's person and personal effects do not require 'a case-by-case adjudication' because they always implicate *Chimel* concerns for officer safety and evidence preservation." (quoting *Robinson*, 414 U.S. at 235)).

Therefore, a lawful custodial arrest justifies a warrantless search of the person, as long as the search is contemporaneous with the arrest. *See Vance*, 790 N.W.2d at 786 ("[T]he lawful custodial arrest of a person justifies the contemporaneous search of the person arrested and of the immediately surrounding area . . . ."). Here, the officers searched the fanny pack while still at the scene and within minutes of Scullark's arrest. Officers need not expose themselves to unnecessary danger by searching the arrestee and the items on his person before he is properly secured. "[T]he police may see to the safe custody and security of suspects first and then make the limited search which the

circumstances of the particular case permit." *State v. Shane*, 255 N.W.2d 324, 328 (Iowa 1977). "The search incident to arrest rule respects that an officer who takes a suspect into custody faces an unpredictable and inherently dangerous situation and that officers can and should put their safety first." *Byrd*, 310 P.3d at 797.

Scullark's position requires extending the reasoning of *Gant* and *Gaskins* to searches of the person. However, a reasonable search of the person should not depend on games of "hot potato." An arrestee cannot establish and reduce the scope of a permissible SITA by handing the item to a companion before the officer can search him. *See State v. Rincon*, 970 N.W.2d 275, 284–85 (Iowa 2022) (holding that a woman could not prevent police officers from searching her purse by removing it from an automobile when officers had authority to search the automobile and its containers under the automobile exception); *see also Reifsnyder*, 44 Iowa at 103 ("The offender would speedily dispose of all such articles which would be found upon his person that might lead to the discovery of crime.").

We therefore conclude that because Scullark was wearing the fanny pack around his waist at the time of arrest, the fanny pack was immediately associated with his person for purposes of the SITA exception, and the categorical rule from *Robinson* and the related Iowa precedent applies. The search of the fanny pack was reasonable as a search of Scullark's person, and no additional justification for the search was required beyond Scullark's lawful custodial arrest. We hold that the search of Scullark's fanny pack was a valid SITA under both the Fourth Amendment and article I, section 8. The district court did not err in denying Scullark's motion to suppress.

**III. Conclusion.**

For the reasons stated above, we vacate the court of appeals decision and affirm the district court order denying Scullark's motion to suppress.

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

All justices concur except McDermott, J., who files a dissenting opinion.

**McDermott, Justice (dissenting).**

Under the Iowa Constitution, before an officer may search or seize "persons, houses, papers [or] effects," the officer must first obtain a warrant. Iowa Const. art. I, § 8. One recognized exception to this warrant requirement, justified by necessity, allows an officer to search a person placed under arrest and the area within the person's immediate control for two purposes: (1) to ensure the officer's safety and (2) to prevent the person from destroying evidence of a crime for which there is probable cause. The majority concludes that the officers' search of Patrick Scullark, Jr.'s fanny pack was lawful under this "search incident to arrest" exception. But because the officer's search of the fanny pack in this case meets neither of the two purposes for the exception, I must respectfully dissent.

Scullark was in his backyard when Officer Jacob Bolstad arrived to investigate an allegation of domestic violence. Bolstad's bodycam footage shows that as he began to talk to Scullark about the matter, Scullark got upset and walked inside with Bolstad walking after him. Inside the house, the discussion continued, with a couple of women also present in the room who were helping Scullark move in. Scullark was distraught and complained to Bolstad that he didn't do anything, he was on parole, and the charge might mean going back to prison. After a few minutes, Scullark calmed down, and at that point, Bolstad told Scullark that he needed to take him to jail.

Before Bolstad put Scullark in handcuffs, Scullark handed his fanny pack and cellphone to one of the women in the room. As Bolstad began to handcuff Scullark, Bolstad said, "All the stuff you're handing to her, I'm searching." As Bolstad continued applying the handcuffs, the woman carrying the fanny pack

and phone began to walk ahead of them into an adjoining room. Bolstad told the woman, "Stay over here with that." The woman promptly set the fanny pack and phone down on some boxes. As Bolstad led a handcuffed Scullark toward the door, Bolstad stopped where the woman had set down the items and picked up the fanny pack and cellphone. Bolstad admits that, at this point, Scullark could not have accessed the fanny pack.

Another officer who had arrived was waiting in the backyard when they exited the house. Bolstad handed the fanny pack to the other officer to carry. Bolstad led Scullark from the back door, around the house, and to Bolstad's police cruiser in front of the house. The two women from inside walked with them. When they got to Bolstad's cruiser, Bolstad patted Scullark down, revealing no weapons or contraband. At this point, a third officer had arrived to assist. Before putting Scullark in the cruiser, Bolstad gave Scullark, still handcuffed, a moment to talk to the two women. The women had Scullark's mother on speakerphone, and Scullark told his mother that he was being taken to jail. Bolstad then placed Scullark in the back of the police cruiser and closed the door. At this point, outside the cruiser, the other officer holding the fanny pack opened it, and he and Bolstad searched it. The fanny pack contained a baggy of methamphetamine, for which Scullark was ultimately prosecuted for possession.

One of the evils that the Fourth Amendment to the United States Constitution was designed to protect against was the abuse of suspicionless general warrants. *See* William J. Cuddihy, *The Fourth Amendment: Origins and Original Meaning 602–1791*, at 603–13 (2009) [hereinafter Cuddihy, *The Fourth Amendment*]. General warrants allowed government officers to search a person or property for evidence of wrongdoing without specifying what they were looking

for or why they had suspicion to search. *See Sanders v. State*, 2 Clarke 230, 239 (Iowa 1855). Warrantless searches are *per se* unreasonable unless the state proves that a recognized exception to the warrant requirement applies. *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). The warrantless search of Scullark's fanny pack—his "effect," meaning movable personal property—was thus unlawful unless a recognized exception applies.

The State relies on the search-incident-to-arrest exception, which permits an arresting officer to search the arrestee's person and "the area into which an arrestee might reach." *Chimel v. California*, 395 U.S. 752, 763 (1969). Under the Federal Constitution, the exception allows the search where it ensures officer safety, prevents evidence from being destroyed, and in the context of automobiles, enables evidence collection. *See United States v. Robinson*, 414 U.S. 218, 235–36 (1973); *Arizona v. Gant*, 556 U.S. 332, 343–44 (2009). Under the Iowa Constitution, the exception allows the search only where it ensures officer safety and prevents evidence from being destroyed. *See State v. Gaskins*, 866 N.W.2d 1, 14 (Iowa 2015). Because an automobile is not involved, the question presented here is the same under both the Federal and Iowa Constitutions: whether once Scullark removed his fanny pack and was handcuffed, the officer-safety or evidence-destruction rationales existed to justify the search of the fanny pack.

Once Scullark removed the fanny pack, it was no longer part of his "person." And when the woman walked into the adjoining room with the fanny pack, it was no longer within an area that Scullark could readily access. From that moment forward, neither of the rationales supporting the search-incident-to-arrest exception—officer safety and evidence preservation—could justify the search of the fanny pack. When the officers eventually searched the fanny pack

while standing outside the police cruiser, Scullark sat handcuffed in the back seat of the cruiser with the door shut. We do not assume that once handcuffed and locked in a police car, an arrestee will exhibit "the skill of Houdini [or] the strength of Hercules" to break free and gain access to a container. *Thornton v. United States*, 541 U.S. 615, 626 (2004) (Scalia, J., concurring in the judgment) (quoting *United States v. Frick*, 490 F.2d 666, 673 (5th Cir. 1973) (Goldberg, J., concurring in part and dissenting in part)). Scullark could not have grabbed a weapon hidden inside, nor could he have removed any items of evidence had there conceivably been any.

It bears mentioning that Scullark never ceded his privacy interest in the fanny pack. The fanny pack was not in any sense abandoned, as Scullark personally handed it to the woman inside his home. *See State v. Bumpus*, 459 N.W.2d 619, 625 (Iowa 1990) (holding that a defendant lacks standing to challenge a search or seizure of abandoned property). And in her hands (or as it lay on a box in his home), the fanny pack was not otherwise going to be taken to the jail where it inevitably would have been searched as part of the booking process. *See State v. Entsminger*, 160 N.W.2d 480, 483–84 (Iowa 1968) (holding that police can search an arrestee's effects during booking without a warrant).

"The search-incident-to-arrest exception to the warrant requirement," we have declared, "must be narrowly construed and limited to accommodating only those interests it was created to serve." *State v. McGrane*, 733 N.W.2d 671, 677 (Iowa 2007). The warrantless search of the fanny pack in this case did nothing to advance those interests. Because the fanny pack didn't fall within the search-incident-to-arrest exception, or any other exception, the police needed to get a warrant supported by probable cause to search it. They didn't, and the search was thus unconstitutional. *See State v. Freeman*, 705 N.W.2d 293, 297 (Iowa

2005). The district court erred in denying the motion to suppress the evidence uncovered through the search of the fanny pack.

This conclusion is not groundbreaking. In *State v. Canas*, for instance, the police had a warrant for the defendant's arrest. 597 N.W.2d 488, 491 (Iowa 1999), *overruled on other grounds by, State v. Turner*, 630 N.W.2d 601 (Iowa 2001). The police arrived at the defendant's motel, but when the defendant saw them, he went back into his room and slammed the door. *Id.* When the police knocked and the defendant answered, they pulled him out of the room to arrest him. *Id.* When the officers grabbed him, the defendant had been standing about four feet from an unzipped bag on a nightstand, arguably within his area of immediate control. *Id.* After his arrest, the police went back into the motel room, searched the bag, and found drug paraphernalia. *Id.* We held that the search-incident-to-arrest exception did not apply because, at the time of the search, the defendant was outside the motel room and thus the search did not advance officer safety or prevent the destruction of evidence. *Id.* at 493.

In *United States v. Davis*, the defendant was being chased by police through a swamp. 997 F.3d 191, 198 (4th Cir. 2021). As he came out of the swamp to surrender, he took off the backpack he was wearing and laid it on the ground. *Id.* The police handcuffed him and then searched his bag. *Id.* The United States Court of Appeals for the Fourth Circuit concluded that the government could not justify the search of the bag under the search-incident-to-arrest exception because once the defendant was secured in handcuffs and the backpack was not under his immediate control, there was no longer any safety or destruction-of-evidence concerns. *Id.*

Similarly, in *United States v. Fernández Santos*, the police went to the defendant's house to arrest him. 716 F. Supp. 3d 8, 12 (D.P.R. 2024). When they

arrived, they saw the defendant throw a fanny pack (yes, another fanny pack) out a window and into the backyard. *Id.* The police arrested the defendant inside the house. *Id.* After about forty minutes, the police searched the fanny pack. *United States v. Fernández Santos*, No. 23–063, 2023 WL 8915838, at *2 (D.P.R. Dec. 27, 2023). The district court rejected the government's search-incident-to-arrest argument and suppressed the items discovered in the fanny pack, concluding that once the defendant threw the fanny pack into the yard, the search would not advance the officer-safety or evidence-preservation rationales. *Id.* at *7–8; *Fernández Santos*, 716 F. Supp. 3d at 14 (adopting the magistrate's suppression ruling).

*United States v. Knapp* presents a factual scenario even more analogous to this case. 917 F.3d 1161, 1163 (10th Cir. 2019). In *Knapp*, the defendant was arrested after giving a witness statement to police about a grocery store theft when officers learned that she had an outstanding arrest warrant. *Id.* After making the defendant wait inside the grocery store while several officers completed the earlier theft investigation, one of the officers eventually took possession of the purse she had been carrying. *Id.* at 1163–64. The officer asked for her consent to search the purse, but she refused. *Id.* at 1164. When the defendant asked if she could simply leave the purse in her truck or give it to her boyfriend, the officer refused. *Id.* at 1163. The officers placed her in handcuffs behind her back and led her outside. *Id.* at 1164. As the defendant stood outside a police cruiser, an officer threatened that she would be guilty of a felony if she brought drugs to a detention center. *Id.* The defendant then told the officer that the purse contained a pistol. *Id.* Three officers were present as they searched the purse while the defendant, still handcuffed, stood with her back to them. *Id.* She was charged with being a felon in possession of a firearm. *Id.*

The government in *Knapp* argued that the search was justified under the search-incident-to-arrest exception. *Id.* at 1167. Analyzing the rationales for the exception described in *Chimel v. California*, the Tenth Circuit first concluded that the purse was not part of the defendant's "person" at the time of the search. *Id.* at 1167–68. Turning next to whether it was within the area of the arrestee's immediate control, the court recited several facts: (1) the defendant's hands were cuffed behind her back, (2) the arresting officer was standing next to her with two other officers standing nearby, (3) the purse was closed and placed three to four feet behind her, and (4) the officers had maintained exclusive possession of the purse since placing her in handcuffs inside the grocery store. *Id.* at 1169. In light of these facts, the court held that it was unreasonable to believe she could have gained possession of a weapon or destroyed evidence inside her purse at the time of the search. *Id.* at 1168. The panel thus reversed the district court's denial of the defendant's motion to suppress. *Id.* at 1170.

In this case, the majority concludes that once an officer begins an arrest attempt, the search-incident-to-arrest exception makes anything on or near the person *at that moment* fair game to search, regardless of what happens after. But in real life, time does not freeze, as we all know, and our analysis of risks similarly does not remain static as events change. Grounding the search-incident-to-arrest exception on such an artificial notion—reducing interactions between suspects and police to what can be thought of as a series of Polaroid pictures and justifying a later search by holding up an outdated snapshot—untethers the exception from its rationale. Had the cases discussed above relied on the "freeze-frame" notion of the search-incident-to-arrest exception, none would have come out the way that they did.

The search-incident-to-arrest exception is based on an *existing* exigency—a present threat to officer safety or a present threat of losing evidence—not a historical one. Taken to its logical end, the majority's theory would have permitted the officers in this case not simply to have searched the fanny pack five minutes after Scullark was handcuffed (as happened here), but for the officers to hold onto the fanny pack and conduct a warrantless search a month or even a year later, in a location miles away from Scullark.

The majority worries that a different application would make search-incident-to-arrest decisions more complicated because it would force officers to decide between (1) making the arrest immediately, before personal items can be discarded, to take advantage of the warrant exception or (2) delaying the arrest and having to go through the hassle of a search warrant. But as Justice Scalia warned, "The weakness of this argument is that it assumes that, one way or another, the search must take place. But conducting a *Chimel* search is not the Government's right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful." *Thornton*, 541 U.S. at 627 (Scalia, J., concurring in the judgment). The search-incident-to-arrest exception is based on the justification that officers *need* to search items that presently *are* on or near the arrestee, not that officers *get* to search items that previously *were* on or near the arrestee.

I recognize the attractiveness of a bright-line rule in these situations. Clear rules, when they can be drawn consistent with a person's constitutional rights, are unquestionably worthy judicial pursuits. But this case demonstrates what happens when we expand what is supposed to be a limited exception in favor of easier-to-administer rules. The framers crafted our constitutional search and seizure protections *despite* the potential hindrance or haziness they might pose

for law enforcement. "The Fourth Amendment's framers were well aware of the constitutional alternatives regarding search and seizure." Cuddihy, *The Fourth Amendment* at 613.

When in conflict, upholding our constitutional protections must always prevail over the urge for simplicity in implementation. "Solving unsolved crimes is a noble objective," as Justice Scalia observed, "but it occupies a lower place in the American pantheon of noble objectives than the protection of our people from suspicionless law-enforcement searches. The Fourth Amendment must prevail." *Maryland v. King*, 569 U.S. 435, 481 (2013) (Scalia, J., dissenting).

I would reverse the trial court's ruling denying the motion to suppress and remand the case for further proceedings.